**FARMERS BANK OF the STATE OF DEL- AWARE, a corporation of the State of Delaware, Plaintiff,**

v.

**Mildred HOWARD and Farmers Bank of the State of Delaware, Executor of the Estate of Sadie Cooper Rust, Defendants.**

Court of Chancery of Delaware.

New Castle.

Oct. 1, 1969.

Franklin S. Eyster, II, and Martin I. Lubaroff, of Richards, Layton & Finger, Wilmington, for plaintiff.

Samuel Handloff, Wilmington, for defendant Farmers Bank of State of Delaware, Executor of Estate of Sadie Cooper Rust.

Clifford B. Hearn, Jr., of Biggs & Battaglia, Wilmington, for defendant Mildred Howard.

DUFFY, Chancellor.

The question for decision is whether a *joint tenancy was created in a bank account* before the death of the depositor.

A.

Prior to July 8, 1967, Sadie Cooper Rust had a savings account in the Farmers Bank with a balance of $8,687.45. On that day she directed the Bank to add the name of Mildred Howard to the account but specifically directed that Mrs. Howard not be told of this. Mrs. Rust signed a signature card reading in part as follows:

"IT IS HEREBY stipulated and agreed that this account is a joint account, subject to withdrawal by any one of the depositors in this account whose signatures appear below, and that in the event of the death of any one or more of said depositors, the moneys then due thereon shall belong to, and/or shall be subject to withdrawal by, any or either of the survivors and/or the last survivor."

The Bank added Mrs. Howard's name to the account and agreed that she would not be notified; she did not sign the signature card. The record does not show that Mrs. Howard knew anything about the account before Mrs. Rust's death.

Mrs. Rust died on February 22, 1968 and Farmers Bank was granted letters testamentary upon her estate. When a contest developed between the Executor and Mrs. Howard as to ownership of the deposit, the Bank filed this complaint in interpleader. Both the Executor and Mrs. Howard made claim to the deposit and the Executor then moved for summary judgment. This is the decision thereon after briefing and argument.

B.

Mrs. Howard argues that the balance on deposit passed to her by operation of law when Mrs. Rust died. She relies, not upon a testamentary gift, but upon the proposition that a joint tenancy in the account was created when her name was added by the Bank to the account.

Citing Messersmith v. Delaware Trust Company, 42 Del.Ch. 529, 215 A.2d 721 (1965), and Walsh v. Bailey, 41 Del.Ch. 420, 197 A.2d 331 (1964), Mrs. Howard contends that the Court should look to the language of the instrument (the signature card) applicable to the deposit and that this clearly reflects Mrs. Rust's intent to create a joint tenancy in the account. Each of those cases involved the "intent of the parties" as reflected by the instrument creating a joint bank account; in each case the Court looked to the instrument in testing the contractual aspect of what was done. But "intent" and "contract" involved both parties because *both* signed the card governing that account. That rule of law has no application here, however, because Mrs. Rust was the only party who signed the card and thus there was no "contract" between depositors. In short, *Messersmith* and *Walsh* are concerned with what happens when a joint tenancy has been created in a bank account. Here, the question is whether a joint tenancy was created. Assuming that Mrs. Rust intended to create a joint account with right of survivorship,

did she do so? Did she make an *inter vivos* gift, complete and valid in law?

On the subject of gifts, the Superior Court said in Hill v. Baker, 9 Terry 305, 102 A.2d 923, 925:

"Generally speaking gifts are classified as gifts inter vivos and gifts causa mortis. A gift inter vivos is usually defined as one between living persons, consisting of a voluntary transfer of property from one living person to another without any valuable consideration perfected and made absolute during the lifetime of the parties. A gift causa mortis is usually defined as a gift of personal property made in expectation of the donors death which may be revoked by him, upon condition that the donee shall be entitled to the property if the donor dies as expected and the donee survives him. 24 Am.Jur., p. 732 § 4.

The principle is well established by the authorities, that there must be an actual or constructive delivery of the property to the donee, in order for a gift inter vivos or causa mortis to be valid and effective."

The Supreme Court of Pennsylvania has applied this rule of law to joint tenancy in a bank account, saying in Hosfeld's Estate, 414 Pa. 602, 202 A.2d 69 (1964):

" * * * Martella's Estate, In re, 390 Pa. 255, 135 A.2d 372, outlines the principles applicable in this area of the law: (1) the mere fact that money is deposited in the account of the owner *and* another or the owner *or* another does not *standing alone* prove a gift inter vivos; (2) it is the burden of the claimant to establish the existence of a gift inter vivos by clear, precise, direct and convincing evidence; (3) to constitute a gift inter vivos there must be shown an intention to make an immediate gift and such an actual or constructive delivery to the donee (a) as to divest the donor of all dominion and control or (b) if a joint tenancy is created, as to invest in the donee so much dominion and control of the subject matter of the gift as is consonant with a joint ownership or interest therein. * * *"

And the same Court restated the law again in Brozenic's Estate, 416 Pa. 204, 204 A.2d 918 (1964).

■ Thus in order to create a joint tenancy there must be an equal right in all of the tenants to share in the enjoyment during their lives, 48 C.J.S. Joint Tenancy § 1; and this means that unity of possession (along with unity of interest, title and time) is an essential element of such ownership, § 3.

■ In my view Mrs. Rust did not make an effective gift *inter vivos* of an interest in the bank account. She did not make delivery of the property to Mrs. Howard in any way, actual or constructive. She did not give her access to or control over the deposit and indeed did not even want her to have knowledge of what she had done. And Mrs. Rust's conduct was wholly inconsistent with what was written on the signature card: the deposit was *not* "subject to withdrawal by any one of the depositors" because (a) Mrs. Howard was not told about the account, and (b) Mrs. Howard was not a "depositor" within the meaning of the writing because she never signed it. In short, Mrs. Howard was not invested with such dominion or control of the deposit as is consonant with joint ownership. Compare Rush v. Rush, 138 N.J.Eq. 611, 49 A.2d 238 (1946); Hosfeld's Estate, supra, and Brozenic's Estate, supra. She had neither possession nor enjoyment thereof.

In sum, a joint tenancy was never created in the account. Summary judgment will therefore be granted to the Executor of the Estate of Mrs. Rust.