Remone S. BOTHE, sometimes known as Robert Bothe, Individually, and Remone S. Bothe, sometimes known as Robert Bothe, Trustee for Marjorie K. Rice, et al., Plaintiffs,

v.

Lois .E. DENNIE, Individually and Lois E. Dennie, Executrix of the Last Will and Testament of D. Clinton D. Todd, Defendants.

Superior Court of Delaware, New Castle.

July 10, 1974.

Thomas H. Wingate, Wilmington, for plaintiffs.

James F. Kruzinski, Wilmington, for defendants.

## OPINION ON MOTION TO DISMISS

TAYLOR, Judge.

Plaintiff seeks to recover certain bonds which were referred to in an instrument which was delivered to plaintiff on December 16, 1971 by D. Clinton D. Todd [deceased]. D. Clinton D. Todd died on March 25, 1972 and his last will and testament dated November 12, 1971 was duly probated, pursuant to which Lois E. Dennie [defendant] was appointed executrix

of his estate. Defendant is sued in her capacity as executrix and also as an individual, being the residuary legatee under the will of deceased. Since the distinction in capacity is not of significance to this Opinion, defendant will be treated as one person. Defendant has moved to dismiss the complaint on the basis that the transaction between plaintiff and deceased upon which plaintiff bases his claim was neither a valid gift made during the lifetime of deceased nor a valid testamentary disposition. Both sides have submitted evidentiary material. Pursuant to Civil Rule 12(b), the Court will treat this as a motion for summary judgment. Although the formalities of the Rules have not followed in authenticating the evidentiary material which has been attached to the briefs, it has been accepted by both sides as being true, and hence, the parties are held to have waived formal authentication.

The facts[1] pertinent to this case as asserted by plaintiff are as follows:

(1) On October 29, 1971, deceased changed the name of the registrants for his safe deposit box at the Delaware Trust Company branch to the name of deceased and of plaintiff. The safe deposit box agreement with the bank provided that each registrant shall have the same rights as a sole lessee. It further provided that in the event of death of one of the registrants his rights would succeed to his personal representative, but that the separate right of access of the other registrant would not be affected or impaired by death. Contemporaneously with the naming of plaintiff as a registrant on the safe deposit box, deceased gave plaintiff a key to the garage of his house, pointing out that the door between the garage and house was kept unlocked. Deceased further showed plaintiff where he kept the key to the safe deposit box in a drawer in his house.

(2) On November 12, 1971, deceased executed the last will and testament which was probated after his death.

(3) On December 16, 1971, deceased delivered to plaintiff an envelope addressed to plaintiff with the statement "to be opened immediately after my death" and signed by deceased. The envelope contained an instrument signed by deceased, but unwitnessed. The instrument stated that in the safe deposit box were certain bearer bonds in designated amounts totalling $120,000 in face value. After stating an intention not to have these bonds listed as assets of the estate, in order to avoid payment of Federal and State "inheritance" taxes, the instrument directed: "Since you are the only one who will have access to my safe deposit box, immediately after my death please remove all of these bonds and treasury notes and distribute them" in the manner designated in the instrument. The instrument concluded by saying "in addition to the above I made out a will leaving various people the ballance [sic] of my estate consisting of a house and content, stocks, bonds, savings certificates, and bank accounts".

(4) On January 17, 1972, deceased suffered a heart attack.

(5) On January 18, 1972, deceased called plaintiff asking him to locate plaintiff's car and to bring to deceased certain papers which were at deceased's home. Plaintiff did this on January 19, 1972.

(6) On January 21, 1972 plaintiff entered the garage to correct an oil spill which had occurred in the garage, and attempted to enter the house. He found that the door had been secured with a chain.

1. Defendant contends that plaintiff is barred by 10 Del.C. § 4302 from testifying to the transaction with deceased. It is noted that the statute was modified substantially by 59 Del.Laws, Ch. 131, effective July 3, 1973. Without resolving the applicability of the amendment to the present case, for purposes of the motion under consideration, the Court will consider the evidence which plaintiff would present.

(7) On March 22, 1972, deceased died.

(8) Shortly after deceased's death, defendant was appointed executrix of the estate of deceased, and on or about April 1, 1972, she obtained possession of all of the contents of the safe deposit box including the bonds referred to in the instrument dated December 16, 1971.

(9) After the death of deceased, plaintiff opened the envelope which deceased had given to him, and for the first time learned its contents. Plaintiff was unable to obtain access to the safe deposit box because he did not have the key. He subsequently demanded the bonds from defendant and was refused.

(10) The bonds still remain in the custody of defendant as executrix.

Defendant contends that the transaction between deceased and plaintiff was not a valid testamentary act because it does not satisfy the requirements of 12 Delaware Code § 102. Plaintiff does not contend otherwise.

■■ Plaintiff supports the validity of the transaction on the ground that it was either an executed gift or an inter vivos trust. Assuming requisite mental capacity, the owner of property may dispose of it during his lifetime by gift or by inter vivos trust. Hill v. Baker, Del.Super., 9 Terry 305, 102 A.2d 923 (1953). Because of the possibility of abuse which can result from the transfer of assets without consideration, certain formal requirements have been developed in order to effect a valid transfer by gift. If the requirements are not met, the transaction is not a valid gift. In order for a gift to be effective, the owner must have intended to make a gift and he must have made actual or constructive delivery of the subject matter of the gift. Ibid; Wilmington Trust Co. v. General Motors Corp., Del.Supr., 29 Del. 572, 51 A.2d 584 (1947).

■ The delivery of the subject matter of the gift need not be simultaneous with the words by which the donor expresses his intent to make the gift. 38 Am.Jur.2d 823, Gifts § 21; 38 C.J.S. Gifts § 27, p. 806. However, delivery must occur during the donor's lifetime. Highfield v. Equitable Trust Co., Del.Super., 4 W.W.Harr. 500, 155 A. 724 (1931).

A donor may take irrevocable steps to transfer ownership to a donee even though he continues to hold the documentary proof of ownership. Hill v. Baker, supra. Thus, where the donor has a stock certificate issued in the name of the donee and takes no action inconsistent with donee's ownership of the stock, the gift will be considered effective even though the certificate is not delivered to the donee or is retained by the donor. Wilmington Trust Co. v. General Motors Corporation, supra.

■ It must appear that during his lifetime the donor relinquished in favor of the donee all present and future dominion and control over the gift property. 38 C.J.S. Gifts § 20, p. 799. Any further possession and control by the donor must be in recognition of the right of the donee, i. e., as agent or trustee or custodian for the donee. 38 C.J.S. Gifts § 26, p. 806. If the donor retains dominion and control of the property during his lifetime, so that the gift would take effect only upon the death of the donor, it must comply with the testamentary law if it is to be valid. 38 C.J.S. Gifts § 42, p. 821.

■ The evidence is that the deceased at no time considered that he was turning over the bonds to plaintiff. Although he made plaintiff a record co-owner of the safe deposit box, he retained the key to the box during his lifetime. The safe deposit box rental agreement did not provide for a joint tenancy or right of survivorship. With respect to the bonds, these were never physically delivered to plaintiff nor were they pointed out or set apart as belonging to plaintiff either in his individual or trust capacity. Deceased treated the bonds as being his own by clipping interest coupons from them. The instrument which

deceased gave to plaintiff shows that deceased did not consider that he had turned over the bonds to plaintiff. The reference is to bonds "in my safe deposit box". The direction deals with actions to be taken after death of the deceased. Deceased merely directed that the bonds be removed "immediately after my death", and recognized that since they were unregistered "no one can claim ownership". Because of this fact, the deceased directed that the bonds not be listed as assets of his estate "in order to avoid a large payment of State and Federal inheritance taxes". All of these declarations point to the deceased's intention that the bonds would remain his until death and that immediately thereafter the trust would become applicable. Nothing points to a transfer of an interest in the bonds away from deceased or to plaintiff during deceased's lifetime or an intention to do so.

■■■ Plaintiff contends that if the actions of deceased fail to qualify as a gift, the transaction can be sustained as an inter vivos trust. It is true that a donor can during his lifetime create an inter vivos trust under which he can retain certain rights, such as income rights, during his lifetime. Bodley v. Jones, Del.Supr., 27 Del.Ch. 273, 32 A.2d 436 (1943); Highfield v. Equitable Trust Co., supra; Robson v. Robson's Adm., Del.Ch., 3 Del.Ch. 51, 62 (1866). However, in order to create such a trust, where the creation of the trust is without legal consideration, the formal requirements for a valid gift must be found. Robson v. Robson's Adm., supra. The donor must have divested himself of some interest which he formerly had in the property, and the divestiture must have been absolute at the time of creation of the trust. Ibid. Moreover, it must clearly appear that this result was intended by the donor. Bodley v. Jones, supra.

The facts in Robson v. Robson's Adm., supra, bear striking resemblance to the present case. There, the donor had delivered bonds to a third person for delivery to the donee after the donor's death as "a free gift to him at my decease". Donor collected the interest on the bonds throughout his lifetime. The Chancellor held that the actions of the donor did not create a valid inter vivos trust.

In Bodley v. Jones, supra, the donor had given to the donee an instrument which directed that his executor deliver to donee a certain bond and mortgage. The Delaware Supreme Court held that the instrument was not a present transfer of title to the bond and mortgage, and hence was not a valid gift or inter vivos trust.

■■■ The facts here also fail to qualify as an inter vivos trust.

A related type of transaction which deserves comment is joint tenancy.

■■■ In order to create a joint tenancy with survivorship, language specifically showing an intent to create such relationship must have been used. In re Estate of McCracken, Del.Ch., 219 A.2d 908 (1966); 25 Del.C. § 701. A transaction will not be given the effect of a joint tenancy with right of survivorship unless clear and definite language is used from which the conclusion is without reasonable dispute that such relationship was intended. Short v. Wilby, 31 Del.Ch. 49, 64 A.2d 36 (1949). Even the presence of appropriate language will not control if it appears that the donor did not intend such result. Rauhut v. Reinhart, Del.Orph., 22 Del.Ch. 431, 180 A. 913 (1935).

■■■ The Delaware Supreme Court has held that a gift may be effected by the creation of a joint tenancy with right of survivorship with respect to a bank account by having both parties execute the appropriate instrument which clearly provides for such relationship. Walsh v. Bailey, Del. Supr., 197 A.2d 331 (1964). In *Walsh*, the instrument specifically provided that a joint tenancy was created and that during the lifetime of the parties each party could draw upon the account, and it further provided that withdrawal of the funds by the

survivor would be binding upon the heirs, next of kin, legatees, assigns and personal representatives of each party. Upon these facts, the Supreme Court concluded that upon execution of the instrument, the donor perfected a gift of a joint tenancy with survivorship.

In contrast to the above is the decision of the Chancellor in Farmers Bank of State of Delaware v. Howard, Del.Ch., 258 A.2d 299 (1969), aff'd Howard v. Farmers Bank, Del.Supr., 268 A.2d 870 (1970). In *Howard,* the donor executed the contractual paper, but the donee did not. The donee was not given a right of withdrawal during the lifetime of the donor. The Chancellor held that in order to create a valid joint tenancy with right of survivorship there must be an equal right in all of the tenants to share in the enjoyment during their lives, that is, there must be a unity of possession, along with unity of interest, time and title, as essential elements of such ownership. Thus, the Chancellor held that the donee was not invested with such dominion and control of the subject matter as to be consistent with joint ownership because she had neither possession nor enjoyment thereof during the lifetime of the donor.

■■■ The actions of deceased did not by expressed intent or by formal word establish a joint tenancy with right of survivorship.

Plaintiff relies upon Innes v. Potter, 130 Minn. 320, 153 N.W. 604 (1915) in support of the validity of this transaction. In *Innes,* the donor endorsed stock certificates for transfer to his daughter's name, wrote his daughter that he had transferred the stock to her, and delivered an envelope containing the certificates to a third party for delivery to the daughter upon the death of the donor. The gift was upheld because the subject of the gift had been delivered to a third person for delivery to the donee after donor's death, the donor had parted with all control over it, he had not retained a right to recall it, and he intended that action to be a final disposition of the property. The test, according to *Innes,* is "whether the maker intended the instrument to have no effect until after the maker's death, or whether he intended to transfer some present interest".

The Court concludes that deceased did not make a valid gift or create a valid inter vivos trust or joint tenancy. This conclusion is based upon the legal requirements applicable to those concepts. The Court recognizes that the persons mentioned in the instrument which deceased delivered to plaintiff had such a relationship to deceased that they were not unlikely beneficiaries of deceased's bounty. Yet, deceased chose to exercise his beneficence in two different ways almost contemporaneously. In the case of the will, he satisfied the legal requirements. His actions here failed to meet the legal requirements. Each transaction involved different beneficiaries. Apparently, deceased was more concerned here with tax avoidance than with a valid distribution to the named beneficiaries.[2] The method which deceased chose failed to achieve either objective.

Plaintiff contends that he should have an opportunity to go to trial. It appears that plaintiff could show no more at trial than the facts which I have stated above. These are insufficient to entitle plaintiff to recover the bonds. The Court finds no issue of material fact which would support plaintiff's position. Cf. Standard Acc. Ins. Co. v. Ponsell's Drug Stores, Inc., Del. Supr., 202 A.2d 271 (1964). Accordingly, summary judgment is in favor of defendant.

It is so ordered.

2. The Court does not rule upon the validity of a transaction whose purpose is to cause a violation of the law.