# IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

| | |
|---|---|
| KENNETH SLINEY, | ) |
| | ) |
| Plaintiff, | ) |
| | ) C.A. No. N19C-05-061 FWW |
| v. | ) |
| | ) |
| NEW CASTLE COUNTY and | ) |
| HIGHMARK BCBSD, INC., | ) |
| | ) |
| Defendants. | ) |

Submitted: December 4, 2020
Decided: March 31, 2021

*Upon Defendant Highmark BCBSD, Inc.'s Motion to Dismiss Amended Complaint*
**GRANTED in part and DENIED in part.**

*Upon Defendant New Castle County's Motion to Dismiss Amended Complaint*
**DENIED.**

## OPINION AND ORDER

Francis J. Murphy, Esquire, Jonathan L. Parshall, Esquire, Murphy & Landon, 1011 Centre Road, #210, Wilmington, DE, 19805; Attorneys for Plaintiff, Kenneth Sliney.

Benjamin Chappel, Esquire, Justin M. Forcier, Esquire, Reed Smith, LLP, 1201 N. Market Street, Suite 1500, Wilmington, DE 19801; Attorneys for Defendant Highmark BCBSD, Inc.

Mary A. Jacobson, Esquire, Mengting Chen, Esquire, New Castle County Office of Law, New Castle County Government Center, 87 Reads Way, New Castle, DE 19720; Attorneys for Defendant New Castle County.

**WHARTON, J.**

## I.  INTRODUCTION

Kenneth Sliney ("Sliney") brought this action in May 2019 seeking damages from his employer, New Castle County ("the County"), and Highmark BCBSD, Inc. ("Highmark") in connection for what he alleged was their wrongful refusal to cover medically necessary treatment for his son at the Caron Treatment Center ("Caron") and Serenity Lodge ("Serenity").[1]  The two count Complaint alleged breach of contract and bad faith breach of contract against both Defendants.[2]  In August, both Defendants moved to dismiss.  Highmark's motion was based on Sliney's failure to allege any contractual relationship between himself and Highmark, thus negating both his breach of contact claim and his bad faith breach of contract claim.[3]  The County premised its motion on the fact that an independent medical review performed by Medwork Independent Review ("Medwork") upheld Highmark's denial of benefits.[4]

The Court granted Highmark's motion, granted the County's motion in part, denied it in part, and granted Sliney leave to amend the original complaint.[5]  Sliney took advantage of this opportunity and provided a significantly more fulsome

---

[1] Compl., D.I. 1.
[2] *Id.*
[3] Def. Highmark's Mot to Dismiss, D.I. 9.
[4] Def. New Castle County's Mot. to Dismiss, D.I. 11.
[5] *Sliney v. New Castle County,* 2019 WL 7163356 (Del. Super. Ct. Dec. 23, 2019).

explication of its allegations against Highmark and the County in his First Amended Complaint. ("FAC").[6] The FAC now alleges breach of contract against Highmark in Count I claiming Sliney was a third-party beneficiary of the contract between Highmark and the County.[7] In Count IV Sliney alleges that Highmark assumed the County's duty of assisting him in connection with various aspects of obtaining medical care, thereby taking over primary control of coverage determinations under the County's health insurance plan.[8] He further alleges that Highmark breached its duty of good faith in a variety of ways with respect to the denial of coverage for Sliney's son at Caron, the external review process of that denial, and the failure to provide accurate and timely information about treatment options.[9] Finally, he alleges that as a *de facto* joint venturer with the County, Highmark had a financial stake in denying claims such as Sliney's.[10] Counts II and III allege breach of contract and breach of the duty of good faith, respectively, against the County.[11] Among other things, Count III alleges that the County knew of Highmark's claimed improprieties set out in Count IV, and yet refused to honor its obligations under its contract with

---

[6] FAC, D.I. 18.
[7] *Id.* at 6-9.
[8] *Id.* at 15, 19.
[9] *Id.* at 15-18.
[10] *Id.* at 18-19.
[11] *Id.* at 9-14.

Sliney, while also having a similar financial motive as the County to deny his claims.[12]

Both Highmark and the County move to dismiss, although the County moves to dismiss only on the bad faith claim. In Highmark's motion, for the first time the Court is presented with an argument based on an Administrative Services Only Agreement (ASOA") between it and the County. That agreement purports to preclude any intent by the parties to benefit a third party.[13] Highmark also denies any joint venture relationship with the County.[14] The County seeks dismissal of the bad faith claim because it believes that the submission of Highmark's denial of coverage to an independent review inoculates it from a bad faith claim.[15]

Under Delaware law a non-contracting third party may benefit from a contract only if that third party benefit is intended by the contracting parties. The ASOA makes it clear that the contracting parties – Highmark and the County - intended the contract to confer no benefit on Sliney. Thus, as to Count I, Highmark's Motion to Dismiss is **GRANTED.** But, at this stage of the proceeding, drawing all reasonable

---

[12] *Id.* at 10-15.
[13] Def. Highmark's Mot. to Dismiss FAC at 4, D.I. 21. (When it decided Highmark's original motion to dismiss, the Court did not have the benefit of that contract. The ASOA is included now as an exhibit in Highmark's current motion. Highmark's motion to dismiss the original complaint argued, in part, that Sliney had not alleged any contractual relationship with Highmark but did not refer to the ASOA.)
[14] *Id.* at 4-6.
[15] Def. New Castle County's Mot. to Dismiss FAC, D.I. 22.

factual inferences in favor of Sliney, it is conceivable that he could prevail if he is able to prove the set of facts he has alleged on his bad faith claim against Highmark in Count IV. It is conceivable that Sliney could establish that Highmark and the County are *de facto* joint venturers and/or that Highmark acted sufficiently like an insurer that a special relationship existed between it and Sliney such that Highmark could be found liable for tortious bad faith. Thus, as to Count IV, Highmark's Motion to Dismiss is **DENIED.** It also is conceivable that Sliney could establish that the County knew the Medwork appeal process was sufficiently flawed to overcome any presumption that the County acted in good faith. Therefore, the County's Motion to Dismiss as to Count III is **DENIED.**

## II. FACTS AND PROCEDURAL HISTORY

In June and July of 2017, Sliney's minor son received inpatient medical treatment at Caron and thereafter at Serenity.[16] The County, Sliney's employer, supplied his health insurance, which Highmark administered.[17] Sliney paid $48,150 for treatment at Caron and received a reimbursement of $4,432.[18] Sliney also paid $17,250 for his son to live at Serenity, a sober living facility, as part of his treatment plan after leaving Caron.[19] Highmark denied payment for part of the inpatient

---

[16] FAC at 3,5.
[17] *Id.* at 3.
[18] *Id.* at 5.
[19] *Id.*

treatment at Caron and for all of stay Serenity.[20] After first unsuccessfully appealing directly to Highmark, Sliney submitted the claim for independent review by Medwork, as a part of Highmark's appeal process.[21] On April 18, 2018, Medwork issued a decision upholding the denial of benefits.[22]

On May 8, 2019, Sliney brought this action against the County and Highmark, alleging Breach of Contract (Count I) and Bad Faith Breach of contract (Count II).[23] On August 14, 2019, Highmark moved to dismiss.[24] Two days later, the County also moved to dismiss or, in the alternative, for a more definite statement.[25] Sliney opposed both motions.[26] The Court granted Highmark's motion finding that: (1) despite arguing that he was a third-party beneficiary of the contract between Highmark and the County, Sliney had not alleged in the Complaint that he was a third-party beneficiary of that contract for purposes of coverage determinations under Count I; and (2) Sliney's conclusory bad faith claim under Count II was undermined by his factual allegation that a subsequent independent review affirmed Highmark's

---

[20] *Id.* 4-5.
[21] *Id.* at 4.
[22] *Id.* at ¶ 15.
[23] *Id.* ¶¶ at 20-25.
[24] Def. Highmark's Mot. to Dismiss, D.I. 9.
[25] Def.'s New Castle County's Mot. to Dismiss, D.I. 11.
[26] Pl.'s Resp. Def. Highmark's Mot. to Dismiss, D.I. 14, Pl.'s Resp Def. New Castle County's Mot. To Dismiss, D.I. 15.

denial of coverage.[27] The Court denied the County's motion to dismiss Count 1, but granted it as to Count II for the same reason the claim failed against Highmark – the conclusory allegation of bad faith was undermined by the factual allegation that the denial was upheld by the independent review.[28] However, the dismissals were without prejudice and Sliney was granted leave to amend his complaint.[29]

On January 22, 2020, Sliney filed his FAC.[30] In it he alleges Breach of Contract against Highmark (Count I), Breach of Contract against New Castle County (Count II), Breach of Good Faith against New Castle County (Count III), and Breach of Good Faith against Highmark (Count IV).[31]

In Count I, Sliney alleges breach of contract for failure to pay his son's treatment expenses against Highmark together with other allegations. He alleges that Highmark failed to provide "full, accurate, and timely information" to him about treatment options for his son, which he claims it was obliged to do under its contract with the County.[32] He also alleges that Highmark failed to make "fair, honest, and legally proper coverage determinations" for the treatment Sliney's son received at Caron.[33] In Count II alleging breach of contract against the County, Sliney alleges

---

[27] *Sliney* at 2-3.
[28] *Id.*
[29] *Id.*
[30] FAC, D.I. 18.
[31] *Id.*
[32] *Id.*
[33] *Id.*

that the County improperly failed to pay for his son's treatment and essentially repeats the allegations he makes against Highmark.[34]

Count III brings a claim of a breach of a duty of good faith against the County. The gravamen of that allegation is that an implied covenant of good faith and fair dealing was breached by the County when it engaged in arbitrary and unreasonable conduct having the effect of preventing Sliney from receiving the benefits of his health insurance coverage contract with the County.[35] Specifically, Sliney alleges that the County knew that Highmark was wrongfully denying coverage to his son at Caron, as well as to other similarly situated people in need of addiction treatment; that the County knew that the external review process conducted through Medwork was not conducted in good faith, but instead was designed and intended to result in decisions denying benefits; that the County knew that Highmark was failing to provide full, accurate, and timely information to Sliney about treatment options for his son; that the County and Highmark knew that his son's medical treatment providers had recommended treatment at Caron beyond the two weeks for which partial payment was provided; that both the County and Highmark rejected those recommendations in favor of "an unfair, unreasonable, and inadequate paper review by [a doctor] located in Grand Rapids, Michigan who never interviewed or examined

---

[34] *Id.*
[35] *Id.*

[Sliney's son];" and that the County had a financial motivation to deny claims like those presented by Sliney and other insureds seeking treatment for drug dependency.[36] Sliney's bad faith claim against Highmark in Count IV tracks its bad faith claim against the County in Count III.[37]

## III. THE PARTIES CONTENTIONS

Highmark argues in its motion that Sliney is not a third-party beneficiary of its contract with the County because that contract is an Administrative Services Only Agreement that specifically provides that it is for the exclusive benefit of the contracting parties and does not confer any benefit upon any third party.[38] Highmark further argues that Sliney's bad faith claim, which Highmark characterizes as predicated in the FAC on a *de facto* joint venture theory, is unsustainable because Highmark and the County were not in a joint venture.[39]

The County seeks dismissal of Count III only, the bad faith claim.[40] It argues that Sliney cannot sustain a bad faith claim in light of the submission of the denial of benefits to an independent third party reviewer, Medwork, which upheld the denial.[41] Further, the County argues that Sliney's attacks on the external review process cannot

---

[36] *Id.*
[37] *Id.*
[38] Def. Highmark's Mot. To Dismiss FAC at 2-3, D.I. 21.
[39] *Id.* at 5-6.
[40] Def. New Castle County's Mot. to Dismiss FAC, D.I. 22.
[41] *Id.* at 4-6.

save the bad faith claim since the selection of the independent reviewing physician was not within either Highmark's or the County's control, nor did either defendant have a duty to independently test the review process.[42]

Sliney opposes both motions. With respect to Highmark's motion, he argues as to Count I that he now has alleged that he is a third-party beneficiary of the contract between Highmark and the County.[43] Additionally, he argues that the ASOA is not dispositive because it is at best ambiguous and there are amendments to it and other relevant documents that have not been produced.[44] Those documents include a member's Benefit Booklet, Highmark's policies, practices, and network rules, and any amendments to the ASOA. Further, the provision of the ASOA denying any intent to confer any benefit upon any third parties does not apply to him, because he is not a merely a third-party beneficiary. Under the terms of the ASOA he is also a contractholder, member and subscriber, and that contractholders and members are not excluded by § 14.2. Rather § 11.1 of the ASOA "establishes that Highmark and the County knew and intended that Members (and Providers) could sue them as third-party beneficiaries."[45] Next, he maintains that the better jurisprudential view is that a third-party administrator may be liable to policy holders as third-party beneficiaries

---

[42] *Id.*

[43] Pl.'s Opp. to Def. New Castle County's Motion to Dismiss FAC at 1, D.I. 29.

[44] *Id.* at 4-6.

[45] *Id.* at 5-6.

for their acts of negligence and bad faith. Sliney further argues that Highmark is not just a third-party claims administrator, but is a "joint venturer" with the County, and that it has not limited itself to claims administration, but has assumed many of the functions of an insurer.[46] Finally, Sliney cites the County's cross-claim against Highmark, which he describes as being based upon Highmark's breach of the ASOA and Sliney's status as a potential third-party beneficiary, as supporting his claim of third-party beneficiary status against Highmark.[47]

With respect to Count IV, he asserts that the FAC alleges actions by Highmark constituting bad faith that were not part of the independent review by Medwork, and thus those allegations of bad faith were not undermined by Medwork's review upholding Highmark's denial of coverage.[48] Those allegations include a claim that Highmark recklessly and with conscious indifference provided him "inadequate, untimely, inaccurate, [and] wrong" information about his medical care options, and that Highmark recklessly provided inadequate claims service.[49] The FAC also alleges that Hallmark was not justified in relying on the external review because it and the County knew the physician who performed the review was

---

[46] *Id.* at 6.
[47] *Id.* at 4-5.
[48] *Id.* at 2.
[49] *Id.*

unqualified to do so.[50]  Finally, he contends that the record is sufficient to support his claim that Highmark and the County are joint venturers.[51]

In his opposition to the County's motion he reiterates his argument that Medwork's decision did not resolve all of his allegations of bad faith.[52]  Specifically, Sliney alleges that his bad faith claims for improper claims handling service and full payment of the first two weeks at Caron were not the subjects of Medwork's external review because that review only addressed whether inpatient care at Caron for weeks three and four was medically necessary.[53]  He also reiterates his concerns about the efficacy of the review.[54]  He disputes the County's contention that it had no ability or duty to assess the quality of either the review process or the reviewing physician.[55]  In fact, he alleges that the County knew the reviewer was unqualified and, therefore, it was not legally required to deny benefits to a deserving patient where the decision was inadequate on its face and the reviewer was unqualified.[56]  Thus, in Sliney's view the independent review cannot conclusively establish good faith on the part of either Highmark or the County.[57]

---

[50] *Id.* at 3-6.

[51] *Id.* at 6.

[52] Pl.'s Opp. to Def. New Castle County's Mot. to Dismiss FAC at 3-4, D.I. 31.

[53] *Id.*

[54] *Id.* at 5-6.

[55] *Id.*

[56] *Id.* at 6.

[57] *Id.*

## III. STANDARD OF REVIEW

A motion to dismiss for failure to state a claim pursuant to Superior Court Rule 12(b)(6) will not be granted if the "plaintiff may recover under any reasonably conceivable set of circumstances susceptible of proof under the complaint."[58] The Court's review is limited to the well-pled allegations in the complaint.[59] In ruling on a motion under Rule 12(b)(6), the Court "must draw all reasonable factual inferences in favor of the party opposing the motion."[60] Dismissal is appropriate "only if it appears with reasonable certainty that the plaintiff could not prove any set of facts that would entitle him to relief."[61] The pleading standards governing a motion to dismiss in Delaware are minimal.[62] Delaware is a notice-pleading jurisdiction, and a complaint need only "give general notice as to the nature of the claim asserted against the defendant in order to avoid dismissal for failure to state a claim."[63]

## IV. DISCUSSION

### A. Highmark's Motion to Dismiss.

---

[58] *Browne v. Robb*, 583 A.2d 949, 950 (Del. 1990).
[59] *Doe v. Cahill*, 884 A.2d 451, 458 (Del. 2005).
[60] *Id.*
[61] *Id.*
[62] *See Central Mort. Co. v. Morgan Stanley Mort. Capital Holdings LLC*, 27 A.3d 531, 536 (Del. 2011).
[63] *Nye v. Univ. of Del.*, 2003 WL 22176412, at *3 (Del. Super. Ct. Sept. 17, 2003); *see also* Super. Ct. Civ. R. 8(a)(1).

**1. Count I – The Breach of Contract Claim**

The Court turns first to Highmark's 12(b)(6) Motion to Dismiss Count I – Breach of Contract. A contract made for the benefit of a third party is enforceable and the third party may sue to enforce a promise made for the third party's benefit, even as a stranger to the written agreement.[64] Under general contract principles, in order to be a third-party beneficiary, the parties to the contract must have intended to confer a benefit on the third party.[65] To state a claim for breach of contract, a party must simply plead: (1) the existence of the contract; (2) a breach of the contract; and (3) damages suffered because of the breach.[66] A plaintiff need not plead specific facts to state an actionable claim.[67]

Count I of the original complaint was dismissed, in part, because Sliney had not alleged that he had any contractual relationship with Highmark. In the FAC, he remedies that defect in spades, repeatedly claiming third-party beneficiary status. In Delaware, whether the parties to a contract intend a third party to be a beneficiary of that contract is determined by the language of the contract.[68] Highmark maintains

---

[64] *Farmers Bank of State of Del. v. Howard,* 276 A.2d 744, 745 (Del. Ch. 1971).
[65] *Delmar News, Inc. v. Jacobs Oil Co.*, 584 A.2d 531, 534 (Del. Super. Ct. 1990).
[66] *VLIW Tech., LLC v. Hewlett-Packard Co.*, 840 A.2d 606, 612 (Del. 2003).
[67] *Id.* at 611.
[68] *Willis v. City of Rehoboth Beach*, 2004 WL 2419143, at *2 n3 (Del. Super. Ct. Oct. 14, 2004) (The Court's interpretation of an insurance policy is matter of law) (citations omitted).

that the ASOA answers that question in its favor. The Court agrees. Specifically, § 14.2 of the ASOA states, "This Agreement is for the sole and exclusive benefit of the parties hereto and is not intended to, nor does it confer any benefit upon any third party."[69] The Court does not find the contract, read as a whole, to be ambiguous. The use of terms "contractholder, member, and subscriber" does not imply an intention to confer third-party beneficiary status on those people in the face of the clear language of the ASOA that it is intended for the "sole and exclusive benefit of the parties hereto." Plainly, Sliney and other contractholders, members and subscribers are not parties to the ASOA. The ASOA specifically states that it is between Highmark and the County and Highmark and the County were the only parties to sign the agreement. Since Sliney and others like him who are contractholders, members, or subscribers are neither Highmark, nor the County, they are necessarily third parties.

Sliney's argument that § 11.1 of the ASOA establishes that Highmark and the County "knew and intended that Members (and Providers) could sue them as third-party beneficiaries"[70] is similarly unpersuasive. First, the term third-party beneficiary does not appear in § 11.1. Second, the parties' recognition that someone might sue them (alleging liability under some third-party beneficiary theory) does not establish

---

[69] Def. Highmark BCBSD, Inc.'s Mot. to Dismiss FAC at Ex. A, § 14.2, D.I. 21.
[70] *Id.* at 6-7.

that such plaintiffs are either parties to the contract or third-party beneficiaries of it. Thus, Highmark's Motion to Dismiss is **GRANTED** as to Count 1.[71]

### 2. Count IV – The Breach of Duty of Good Faith Claim

The Court now turns to Highmark's Motion to Dismiss Count IV – Breach of Duty of Good Faith. Although it is clear from the ASOA that Sliney is not an intended third-party beneficiary of the contract between Highmark and the County, it is equally clear that Sliney and Highmark are not strangers to each other. Sliney alleges extensive interactions between himself and Highmark, the particulars of which are set out in detail in the FAC. He maintains that Highmark assumed the County's responsibilities under the County's insurance plan to assist him in "investigating, reviewing, evaluating, servicing, and paying claims, and providing [him] with information needed to access proper and timely medical care."[72] In assuming those responsibilities he characterizes the relationship between Highmark and the County in various ways. He alleges that Highmark was the agent in fact of the County, or "the apparent and/or ostensible agent" of the County.[73] He also

---

[71] In its Order granting Highmark's first motion to dismiss, the Court stated, "As an employee of the County, Sliney is clearly an intended beneficiary of the agreement between the County and Highmark for the purposes of the administration of benefits." *Sliney* at 5. In retrospect, that phrasing was unfortunate and made without the benefit of the ASOA. The Court regrets any confusion that comment may have caused.
[72] FAC at 15.
[73] *Id.* at 3.

alleges, based on certain claimed financial understandings between Highmark and the County as well as Highmark's assumption of the County's responsibilities as an insurer, that they were *de facto* joint venturers.[74] As d*e facto* joint venturers, Highmark shared the County's duty to act in good faith in its dealings with Sliney.[75]

Support for the proposition that Highmark has a duty to act in good faith in its dealings with Sliney despite his lack of third-party beneficiary status is found the cases he cites – *Wolf v. Prudential Ins. Co. of Am.*;[76] *Carey v. United of Omaha Life Ins. Co.*;[77] and *Hunt v. Regence BlueShield of Idaho.*[78] In *Wolf*, the federal district court granted summary judgment to Prudential because it concluded that Prudential's claims handling services did not provide a basis for a bad faith action because Prudential was not a party to the insurance contract between Wolf and his employer and was merely the insurer's agent.[79] In reversing, the 10th Circuit, interpreting Oklahoma law, held, "the analysis should focus more on the factual question of whether the administrator acts like an insurer such that there is a 'special relationship' between the administrator and the insured that could give rise to a duty of good

---

[74] *Id.* at 19.
[75] *Id.*
[76] 50 F3d. 793 (10th Cir. 1995).
[77] 68 P.3d 462, 464-66 (Colo. 2003).
[78] 2003 WL 22176010 (Idaho Dist.).
[79] *Wolf* at 797.

faith.[80]    In *Carey,* the Colorado Supreme Court similarly relied on a "special relationship" theory to reverse the decisions of the trial court and court of appeals that a third party insurance administrator hired by Carey's employer to run the health insurance program had no duty of good faith and fair dealing to Carey because there was no contractual relationship between the administrator and Carey.[81]  The *Carey* Court acknowledged that an insurer had non-delegable duties, but

> [T]he existence of this non-delegable duty does not mean that a third-party claims administrator never has an independent duty to investigate and process the insured's claim in good faith.  When the actions of a defendant are similar enough to those typically performed by an insurance company in claim administration and disposition, we have found the existence of a special relationship sufficient for the imposition of good faith and tort liability for its breach – even where there is no contractual privity between the defendant and the plaintiff.[82]

Finally, in *Hunt,* the Idaho First Judicial District Court followed *Carey* and *Wolf* when it denied summary judgment to a third-party administrator on a bad faith claim brought by an insured with whom it did not have a contractual relationship.[83]

---

[80] *Id.*

[81] *Carey* at 463.

[82] *Id.* at 466.

[83] *Hunt* at *8.

Substantial contrary authority exists, however. In *De Dios v. Indemnity Insurance Company of North America,*[84] a federal district court certified a question of Iowa law in a bad faith action brought by an injured worker against a workers compensation carrier and a third-party claims administrator.[85] A divided Iowa Supreme Court answered the question, holding that Iowa statutory law provided a "workable bright line" delineating entities that act as insurers under its workers compensation system without the need of allowing bad faith claims against entities that act like insurers.[86] Generally, those jurisdictions that prohibit bad faith claims against third-party administrators do so based on the lack of contractual privity between the insured and the third-party administrator.[87]

The parties have not directed the Court to any Delaware case law answering the question whether a third-party administrator may be held liable to an insured with whom it is not in privity for a claim of tortious bad faith in investigating and processing the insured's claim. Nor has the Court found any such authority. Therefore, the Court will exercise its best judgment as to what the better answer to

---

[84] 927 N.W.2d 611 (Iowa 2019).
[85] *Id.* at 613.
[86] *Id.* at 624.
[87] *See Lodholtz v. York Risk Servs. Grp., Inc.* 778 F.3d 635 (7th Cir. 2015) (interpreting Indiana law); *The William Powell Co. v. Nat'l Indem. Co.,* 141 F. Supp. 3d 773 (S.D. Ohio 2015) (interpreting Ohio law); *Charleston Dry Cleaners & Laundry, Inc. v. Zurich Am. Ins.,* 586 S.E.2d 586 (S.C. 2003); *Natividad v. Alexsis, Inc.,* 875 S.W.2d 695 (Tex. 1994).

that question should be. The Court believes that such a claim ought to be permitted to go forward to discovery.  In the Court's view, strict adherence to a privity requirement ignores the current reality on the ground where insurers may essentially delegate all or substantially all their responsibilities under their health insurance plans to third-party administrators.[88]  Although the County was the insurer here, the FAC alleges that the real party with whom Sliney delt and who made all the important decisions was Highmark.  In effect, the FAC alleges that Highmark acted like an insurer.  Thus, the Court finds that Sliney has alleged sufficient facts that, if proven, would establish that there was a special relationship between Sliney and Highmark such that Highmark owed Sliney a duty of good faith.  The Court also finds that Sliney has alleged sufficient facts that, if proven, would establish a *de facto* joint venture financial relationship between Highmark and the County.

**B.    The County's Motion to Dismiss.**

The County has moved to dismiss only Count III – the bad faith claim.  Sliney's original bad faith claim was dismissed because:

> Despite its conclusory language of bad faith, that claim is undermined by the allegation that a subsequent independent review affirmed Highmark's decision. Thus, Sliney actually alleges a reasonable justification for

---

[88] At argument, the Court understood counsel for the County to concede as much, or nearly as much.

Highmark's refusal to pay the claim, thereby defeating his bad faith claim.[89]

In the FAC Sliney alleges that the County was aware that Highmark wrongfully denied coverage for Sliney's son and others similarly situated, and that the external review process was not conducted in good faith and was designed to result in a decision denying benefits.[90] He also alleges that the County knew Highmark failed to provide Sliney with full, accurate, and timely information about treatment options.[91] It further alleges that the County (and Highmark) "unreasonably and unjustifiably" relied on "an unfair, unreasonable, and inadequate paper review by [a doctor] located in Grand Rapids, Michigan, who never interviewed [Sliney's son]" rather than following the recommendations of the local doctors who actually treated Sliney's son.[92] It alleges the Michigan doctor lacked the necessary "background, training, and experience to provide a fair and reasonable opinion about [Sliney's son's] need for further treatment at Caron" and that the doctor's review was a "mere pretext."[93] Finally, Sliney alleges in the FAC that the County had an improper

---

[89] *Sliney* at *3.
[90] FAC at 11.
[91] *Id.* at 12.
[92] *Id.* at 13-14.
[93] *Id.*

financial motive to deny Sliney's claim and other the claims of similarly situated insureds.[94]

In this motion, the County maintains that the independent Medwork decision insulates it from bad faith liability.[95] The County argues that the independent review decision establishes that there was a reasonable basis to deny coverage, and, thus, the County did not act in bad faith. Finally, the County argues that the external review process is controlled by the Delaware Department of Insurance, and neither the County nor Highmark controls the licensing or selection of the independent reviewers.[96] Contrary to Sliney's position that it should not have relied on Medwork's decision, it argues it was legally bound to do so.[97]

For his part, Sliney describes his bad faith claim as having three separate aspects: 1) Highmark's "reckless failure to provide contractually mandated claims service" when urgently needed; 2) Highmark's failure to pay the full cost for the first two weeks care at Caron; and 3) both defendants' unjustified failure to pay for the third and fourth weeks at Caron.[98] He maintains that the independent review did not address his claims based on improper claims handling service and for full payment

---

[94] *Id.*

[95] Def. New Castle County's Mot. to Dismiss at 4-6, D.I. 22.

[96] *Id.* at 6.

[97] *Id.*

[98] Pl.'s Opp. to Def. New Castle County's Mot. To Dismiss FAC at 3, D.I. 29.

of the first two weeks at Caron, and, thus, that review has no bearing on the first two aspects of his bad faith claim.[99] Further, while he acknowledges that the Insurance Commissioner's Office approves review organizations, that approval does not guarantee that those organizations follow Delaware law in all external reviews.[100] He argues that the County and Highmark knew that Delaware law was not followed here in that the expert reviewer was unqualified under 18 *Del. C.* § 6417(c)(1)a.[101] He also alleges that the reviewer was not provided with all of the necessary documents and information required by law and that material information was withheld from him.[102] Finally, he argues that the statute upon which the County relies for immunity from bad faith claims – 18 *Del. C.* § 6416(a) – only entitles it to a rebuttable presumption in its favor because § 6416(b) provides for further litigation in Superior Court after the appeal decision by the independent reviewer.[103]

As the County correctly points out, to maintain a bad faith claim, an insured must allege that an insurer acted "'clearly without any reasonable justification' in denying benefits."[104] Indeed Sliney's failure to do that, while citing the independent

---

[99] *Id.* at 3-4.
[100] *Id.* at 5.
[101] *Id.* at 6.
[102] *Id.*
[103] *Id.*
[104] Def. New Castle County's Mot. to Dismiss FAC at 6, D.I. 22 (citing *Tackett v. State Farm Fire and Cas. Ins. Co.* 653 A.2d 254 (Del. 1995); *Enrique v. State Farm Mut. Auto. Ins. Co.* 142 A.3d 506, 511 (Del. 2016).

review decision led the Court to dismiss the original bad faith claim against the County. The FAC remedies that deficiency. It does so in part by alleging improper claims handling as well as a lack of reasonable justification for the denial of benefits, both of which were not subject to the Medwork decision. It also alleges that the defendants knew that the Medwork review was conducted in a manner incompatible with Delaware law, both in terms of the qualifications of the reviewer and the information provided to him. Finally, it has alleged an improper financial motive for denying the claimed benefits. For these reasons, the Court finds that the Medwork decision does not, as a matter of law, establish that the County (and Highmark) acted in good faith. That determination awaits further development of the facts.

## VI. CONCLUSION

The Court is mindful of the present stage of the proceedings. Its function here merely is to determine if, viewing the allegations in the FAC, together with all reasonable factual inferences in Sliney's favor, it is reasonably conceivable he could prevail. The case is not at the summary judgment stage where the facts have been developed. Accordingly, the Court finds Sliney's allegations against Highmark insufficient to state a claim as to Count I, but sufficient as to Count IV. The Court further finds that Sliney's allegations against the County as to Count III sufficient to state a claim.

**THEREFORE,** Defendant Highmark BCBSD, Inc.'s Motion to Dismiss Plaintiff's Amended Complaint is **GRANTED** as to Count I - Breach of Contract against Highmark and **DENIED** as to Count IV – Breach of Duty of Good Faith against Highmark. Defendant New Castle County's Motion to Dismiss Amended Complaint is **DENIED.**

**IT IS SO ORDERED.**

/s/ *Ferris W. Wharton*

Ferris W. Wharton, J.